NATIONAL CATTLE LOAN COMPANY v. R. Q. WARD.

No. 3826.     Decided October 24, 1923.

(255 S. W., 160.)

1.—Bailment—Trust.

A contract whereby a mortgagor of a stock of cattle transferred the title to the mortgagee, who was to hold and sell them for the benefit of the mortgagor, applying proceeds to discharge the mortgage debt, constituted the mortgagee a trustee, rather than a bailee of the property. The principle of law making a bailee misusing his possession liable for the value of the entire property as for a conversion does not apply. (Pp. 318, 319).

2.—Same—Case Stated.

A mortgagee who, under contract with the mortgagor, had received, held and sold the mortgaged stock of cattle, was found to have acted in violation of the contract and in fraud of the mortgagor in making such sales. It was also found, on special issues, that the mortgagor had failed to account for 189 head of the cattle delivered to it. An unknown number had died or escaped; but the verdict established that the mortgagee had exercised good faith and due diligence to prevent such loss. *Held*: The mortgagee's wrong in making sales did not render it liable as for conversion of those which died or escaped. But as a trustee it was required to account to the mortgagor for all the cattle received. The burden was on it to show the number of those for which it was called to account which had died or escaped without its fault. (Pp. 319, 320).

Question certified from the Court of Civil Appeals for the First District, in an appeal from Harris County.

The suit was by the National Cattle Loan Co. against Ward, who filed a cross action on which recovery in his favor was had. On appeal by the company the question here considered was certified to the Supreme Court, and being by them referred to the commission of Appeals, Section A, for their opinion, that is here adopted by the Supreme Court as its answer.

*Kennerly, Lee & Hill, Geo. A. Hill, Jr.,* and *Bryan, Stone & Wade,* for appellant.

The judgment of the court must conform to the verdict of the jury, and a judgment non obstante veredicto cannot stand; and, therefore, the judgment entered by the court below, allowing the defendant to recover the value of 189 head of cattle, lost through death or by straying, and expressly found by the jury to have been without fault on the part of the plaintiff, must be set aside as contrary to the jury's verdict. H. & T. C. v. Strycharski, 92 Texas 1; Henne v. Moultrie, 97 Texas, 216; Davis v. Pullman Co., 79 S. W., 635; Scott v. Farmers National Bank, 66 S. W. 485; S. W. Tel. & Tel. v. James, 91 S. W., 654.

*Campbell, Myer & Freeman,* for appellee.

The National Cattle Loan Company being bailee in the matter of handling R. Q. Ward's cattle under the contract between R. Q. Ward and said company, said company is charged in law with the necessity and duty of accounting for all of the cattle received by it from Ward. Ruling Case Law, Vol. 3, page 104, paragraph 29; Ruling Case Law, Vol. 3, page 105, paragraph 30; Ruling Case Law, Vol. 3, page 109, paragraph 33.

Appellee submits that under the contract of bailment between appellant and appellee, appellant had no right or authority to misuse and appropriate appellee's cattle, and appellant having failed to comply with the terms of the contract of bailment, and did not account for one hundred and eight-nine (189) head of appellee's herd of cattle, appellant is therefore liable to appellee for the full value of each animal not accounted for by it, whether appellant and its agents acted in good faith or was negligent or not in gathering said cattle and preventing them from dying or straying. Reasonable diligence and good faith in handling said cattle did not relieve appellant from liability to appellee for the value of said animals not accounted for. R. C. L., Vol. 3, page 109, Sec. 33; Sims v. Chance, 7 Texas 570; Mills v. Ashe, 16 Texas 300; Evertson v. Frier, 45 S. W., 201; Cochran v. Walker, 49 S. W., 403; Thornton v. Daniel, 185 S. W., 585.

MR. PRESIDING JUDGE GALLAGHER delivered the opinion of the Commission of Appeals.

This case is before us on a certificate from the Honorable Court of Civil Appeals for the First District.

The facts herein recited are taken from such certificate. The parties are designated as in that court.

Appellant National Cattle Loan Company sued appellee R. Q. Ward in the District Court of Harris County on a note executed to it

by him for the sum of $54,931.60. Appellant alleged that said note
was secured by chattel mortgage on cattle, that said cattle had been
turned over to it by appellee to be sold by it and the proceeds credited
on said note, that the same had been done and that after allowing
appellee all credits arising from the sale of said cattle there remained
a balance of $20,000 on said note unpaid, for which sum it prayed
judgment.

Appellee admitted the execution of the note and mortgage sued
on by appellant, but alleged that the same had been fully paid off and
discharged as shown in his cross bill. He also admitted that appellant
had a good cause of action as set forth in its petition except in so far
as the same might be defeated in whole or in part by the matters and
facts alleged in his said cross bill.

Appellee in said cross bill alleged in substance that at the special
instance and request of appellant he transferred and delivered all of
the mortgaged cattle to it with the understanding and agreement that
appellant would furnish said cattle the necessary water, feed, and
pasturage and at the proper time sell the same for the best price ob-
tainable and after paying the amount due on said note, would pay to
him the balance of the proceeds of such sales; that in violation of its
agreement with him it converted and appropriated all of said cattle
to its own use and had accounted to him and credited said note with
only a small part of the value thereof; that appellant was obligated
to exercise its option to sell such cattle in good faith and for the best
interest of defendant, but that appellant had exercised its right to
sell the same in a fraudulent, wrongful, and arbitrary manner in
violation of its duty and obligation to him and in utter disregard of
his rights; that certain of said cattle were sold when poor and unfit
for market at a sacrifice and loss to him of $10,260,00; that certain
other cattle were sold for much less than their reasonable value; that
appellant received a larger sum therefor than reported and credited
by it on said note.

Appellee further alleged in said cross bill that he had delivered to
appellant at least 1400 head of cattle and that it had accounted to him
for 1060 head of cattle, the same being only a part of the cattle so de-
livered to it; that as a result of neglect and improper handling by
appellant many of said cattle had died; that appellant claimed about
350 head, more or less, of said cattle had strayed out of its pasture and
could not be found; that he did not know whether such claim was
true or false nor what became of said cattle; that it was the duty of
appellant after taking possession of said cattle to safely keep them
and give to him a strict, full, and faithful account of every animal
so received and that it had not done so; that he believed that appel-
lant had converted all of said 350 head of cattle to its own use and
benefit and had disposed of the same, but to whom or for what price
he did not know; that whether said cattle had been disposed of or

had strayed and been lost appellant under its agreement with him was liable for their value, which he alleged to be $21,000.00

Appellee further alleged that the value of all the cattle delivered to appellant was $120,000.00 and that after paying the full sum due on said note, there was due and owing to him from appellant the sum of $60,000.00 for which he prayed judgment.

Appellant by supplemental petition denied all of appellee's charges of fraud and alleged that it had gathered, cared for, and disposed of said cattle with due care and to the best advantage and had given appellee credit for all the proceeds of the sale of said cattle received by it.

The contract under which said mortgaged cattle were delivered to appellant, omitting caption, attestation, and signatures, is as follows:

"Know all men by these presents: That I, R. Q. Ward of Harris County, Texas, in consideration of the covenants and promises hereinafter contained, do hereby agree to gather all of the cattle mortgaged by me to the National Cattle Loan Company, a corporation organized under the laws of the State of Delaware, with its principal place of business at National Stock Yards, Illinois, branded Mc or Mc or *Mc* or / and all other cattle owned by me branded $\pm$ or V-L or G or U or G N or $\pm$ and various other brands, except 35 Hereford bulls branded

now mortgaged to L. Ward, and I agree to deliver all of the above mentioned cattle together with all of my saddle horses and whatever other equipment such as wagons, saddles, and other similar equipment owned by me which may be deemed necessary by Agent of the National Cattle Loan Company in taking care of these cattle, on board cars at Liverpool or in the Horn Pasture in the extreme Southern end of Galveston Island at option of the National Cattle Loan Company.

"I further agree to give the National Cattle Loan Company a bill-of-sale to the livestock so that they may have full control of the handling and sale of same. I further agree that representatives of the National Cattle Loan Company may have the privilege of re-branding all of these cattle and of re-working my range and the adjoining open range with their own men in order that they may catch, re-brand, and deliver into pasture with above mentioned cattle, any cattle in any of the above mentioned brands owned by me which I fail to turn over to them in first delivery.

"In consideration of the faithful performance of the above covenant and agreement by R. Q. Ward, the National Cattle Loan Company does hereby agree to receive from R. Q. Ward the above mentioned cattle at one or the other of the above mentioned places, giving him a written receipt for same. and they further agree to furnish additional expense money for payment of pasturage and whatever labor, feed and watering facilities their representatives may deem necessary for taking proper care of said cattle.

"The National Cattle Loan Company further agrees to care for said cattle, and sell out as they think proper any part or all of them. After sufficient proceeds are received from the sale of said cattle to pay in full the note for $54,931.60 and all accrued interest, together with all expense incurred by them in receiving, pasturing, selling and delivering of said cattle, to turn over to R. Q. Ward any unsold balance of said cattle or any unused proceeds received from the sale of said cattle not needed in the payment of the above note, interest or expenses.

"The National Cattle Loan Company further agrees to furnish R. Q. Ward an itemized statement of all expenses incurred in the handling, sale and delivery of the above mentioned cattle on date of final settlement with him."

The case was tried before a jury and submitted on special issues. There was no evidence tending to show that appellant made any sale or disposed of any of the cattle which it did not report to appellee. The cattle when delivered to appellant were placed in a pasture which was not in its exclusive control. Other herds of cattle belonging to different people were also kept in this pasture. The evidence discloses that a number of the cattle died from stress of weather or lack of feed and some are shown to have escaped from the pasture.

The jury found that the two separate sales of cattle complained of in appellee's cross bill were made by appellant in violation of the contract under which it received said cattle and that said sales were not made in good faith, but with the purpose and intent of defrauding appellee.

The certificate contains the following special issues submitted to the jury on the trial of the case and the answers of the jury thereto, to-wit:

"How many head of cattle of all classes were delivered to plaintiff by the defendant, R. Q. Ward, on or subsequent to October 1, 1918? Answer: 1400.

"How many head of cattle of all classes which were delivered to the plaintiff by the defendant, R. Q. Ward, on or after October 31, 1918, have not been accounted for by the plaintiff. Answer: 189.

"* * * If in answer to Special Issue No. 2 in the Court's charge, you find that there were cattle delivered to the National Cattle Loan Company by R. Q. Ward that have not been accounted for, and if you are unable to answer issue 3 wherein you are asked to state the classes of the cattle which were delivered and not accounted for, if any, then state what was the reasonable market value of said cattle at the time they should have been accounted for. Answer: $47.50.

"Did the plaintiff, National Cattle Loan Company, and its agents and representatives act in good faith and use reasonable diligence in gathering and protecting, from injury or loss, through death or by straying, the cattle in controversy? Answer: Yes."

The trial court upon consideration of the several findings of the jury and the evidence before it, found that the damages which appellee was entitled to recover on his cross bill exceeded the sum due appellant on the note sued on in the sum of $5,542.38 and rendered judgment in favor of appellee against appellant for said amount. The court included in the amounts allowed to appellee in arriving at the said sum an item of $8,977.50, the same being the value of 189 head of cattle delivered by appellee to appellant under said contract and which the jury found were not accounted for.

Appellant complained of the action of the court in allowing said sum to appellee as the value of the said 189 head of cattle unaccounted for in its seventh and eighth assignments of error in the Court of Civil Appeals, which assignments are as follows:

"*Seventh.* The court erred in rendering judgment for R. Q. Ward against the National Cattle Loan Company in the sum of $5,542.38, because said judgment erroneously includes in its computation the value of 189 head of cattle of the value of $47.50 per head, which the jury in its verdict found to have been delivered to the National Cattle Loan Company, but not accounted for by the National Cattle Loan Company, but found that the National Cattle Loan Company, its agents and representatives, acted in good faith and used reasonable diligence in gathering and protecting from injury or loss, through death or by straying, the cattle in controversy, and there was no evidence of any failure to account by the Loan Company for any cattle except those lost through death or by straying.

"*Eighth.* The judgment of the court is a judgment *non obstante veredicto* in that the undisputed evidence established that the relation of principal and agent existed between R. Q. Ward and the National Cattle Loan Company, and the jury found in its verdict that the National Cattle Loan Company, its agents and representatives, acted in good faith and used reasonable diligence in gathering and protecting from injury or loss, through death or by straying, the cattle in controversy, and there was no finding by the jury, nor was there any evidence upon which a finding could be based by the court or by the jury, that the failure to account for said cattle was for any reason except being lost through death or by straying, which the jury found was without fault on the part of the National Cattle Loan Company, and, therefore, the court instead of rendering judgment for the defendant as against the plaintiff for the sum of $5,542.38, should have rendered judgment for the National Cattle Loan Company against defendant R. Q. Ward, for the sum of $3,435.12, if said judgment was in all other respects correct."

Appellant submitted under said assignments the following proposition:

"The judgment of the court must conform to the verdict of the jury, and a judgment *non obstante veredicto* cannot stand; and, therefore, the judgment entered by the court below, allowing the defendant to recover the value of 189 head of cattle, lost through death or by straying, and expressly found by the jury to have been without fault on the part of the plaintiff, must be set aside as contrary to the jury's verdict."

We have quoted the only statement concerning the evidence contained in the certificate submitted by the Honorable Court of Civil Appeals. Neither the statement of facts nor the transcript in the case accompany the certificate presented in this court. Based on the facts so stated in said certificate, the Honorable Court of Civil Appeals submits the following question:

"Did the trial court err in adjudging the appellee entitled to recover the value of the 189 head of cattle unaccounted for by the appellant?"

Appellee seeks to sustain the action of the trial court in allowing him as a credit the full value of the 189 head of cattle unaccounted for, nothwithstanding some of them were shown to have died and some were shown to have strayed and been lost and notwithstanding the jury found that appellant used ordinary diligence to prevent the same, on the ground that appellant was the bailee of all of said cattle and having sold and disposed of a part of the same in bad faith and with intent to defraud appellee, there was such a misuser as to make it liable as a converter of all of said cattle and responsible for the value of those that died and strayed, regardless of the fact that it exercised ordinary care and diligence to prevent such loss. The principle of law invoked by appellee is applicable in case of bailment for hire or for use for a specific purpose or for a limited time, or with other specific restrictions. In the case of Sims v. Chance, 7 Texas, 561, 569-570, plaintiff sued for the value of a slave, alleging that such slave had been hired to defendants as an axe hand with the agreement that he was to be employed in cutting timber and that defendants had wrongfully employed him to assist in operating dangerous machinery, and that his death was the result of such employment. The Supreme Court there announced the rule applicable in such cases as follows:

"But if the bailment were for a particular purpose, if the negro, as in this case, were hired to perform the duties of axe hand alone, then it is very clear that the defendants, by employing the property otherwise than as stipulated, are in law responsible for his loss, irrespective of the fact of whether they exercised due care and attention or not. The law presumes that the loss happened from the misuser of the property. It is said by jurists, and in adjudged cases, that there is, on the part of the hirer, an implied obligation not to apply the thing hired to any other use than that for which it is hired. If a horse be hired as a saddle horse, the hirer has no right to use him as a cart horse or as a

beast of burden; and if the thing is used for a different purpose, or in a different manner or for a longer period than that intended by the parties, the hirer is not only responsible for all damages, but if a loss occurs, though by an inevitable casualty, he will be responsible therefor. (Citing authorities.) The wrong consists in the violation of the contract of bailment; and if a loss occur, the measure of damages for such wrong is the value of the slave or thing bailed.''

The rule so announced is supported by numerous authority. 6 C. J., p. 1115, sec. 51; 3 R. C. L., p. 109, sec. 33; Mills v. Ashe, 16 Texas, 296, 300; Evertson v. Frier, 45 S. W., 201; Thornton v. Daniel, 185 S. W., 585, 588-9.

If it were conceded that the delivery of the cattle by appellee to appellant constituted a bailment, we do not think the rule of law so invoked applicable in this case. The cattle were not delivered to appellant for use of any sort, but for sale. Only such cattle as might remain after sales had been made yielding proceeds sufficient to discharge the note sued on were to be returned to appellee. When appellant made the sales complained of by appellee it was doing what it had express authority from him to do. If it acted in bad faith in making such sales and with intent to perpetrate a fraud on him thereby, it was liable to him for appropriate damages, but such fact did not make it liable to him for the value of other cattle lost by death or straying when such loss did not result from any fault or negligence on its part.

We are of the opinion, however, that the delivery of the cattle to appellant under the circumstances constituted it a trustee rather than a bailee for sale. Appellee expressly agreed in the written contract to give appellant a bill of sale to said cattle to enable it to better control and handle the same. It was the agreement and purpose of the parties that appellant should be invested with the legal title to the property. The passing of the legal title from the owner to the party to whom personal property is delivered distinguishes a trust from a mere bailment. 6 C. J., p., 1098, sec. 12; 3. R. C. L., p. 84, sec. 13. Appellant having received the cattle from appellee for sale and application of the proceeds to the discharge of the note sued on, a fiduciary relation was established and it devolved on it to account for such cattle whether it held them as agent, bailee, or trustee of appellee. 21 R. C. L., pp. 832-834, secs. 15-6; 3 R. C. L., p. 114-5, secs. 37-8; 6 C. J., p. 1139, sec. 92; 26 R. C. L., p. 1387, sec. 252; 39 Cyc. 464.

Appellee in his cross action demanded that appellant account for each and every head of cattle received by it. He had a right to make such demand. It was the duty of appellant to comply with the same. It could account for such cattle in whole or in part by showing the sale of some of the same and the number sold and by showing that some had been lost by death or straying without fault or negligence on its part, and the number so lost. The burden was on appellant, however, to make such showing and though it showed that some cattle were lost

by death or straying without fault or negligence on its part, it did not show that the whole 189 head unaccounted for were so lost. It therefore failed to show a complete defense to appellee's demand that it account for said 189 head of cattle. The burden rested on it not only to show that it was entitled to some credit on the value of the cattle unaccounted for on account of such losses, but to show the amount of such credit which, under the findings of the jury in this case, could be done by showing the number of cattle so lost. 39 Cyc. 464, id. p. 476; 26 R. C. L., p. 1387, sec. 252.

The facts certified are not sufficiently definite to enable us to determine whether the evidence required a finding by the trial court that any specific number of the cattle unaccounted for were lost by death or straying. If it did require such finding, appellant was entitled to credit on the aggregate value of the cattle unaccounted for, for the value of the cattle so lost at the rate of $47.50 per head, as found by the jury and if so, to that extent the judgment of the court was contrary to the verdict of the jury and erroneous. If, on the other hand, there was no evidence requiring a finding by the trial court that any specific number of said cattle found by the jury to be unaccounted for were so lost, then in deference to the judgment rendered by the trial court, we must presume that it found that appellant had failed to make such proof. The rule is the same where the value of lost property is claimed as a credit as it is where recovery for property lost or destroyed is sought as damages and such rule is that such value must be ascertained by a money standard from the evidence. Brass v. Texarkana and Fort S. Ry. Co., 110 Texas, 281, 285; Hartford Fire Ins. Co. v. Galveston, H. & S. A. Ry. Co., (Com. of App.), 239 S. W., 919, 927, and authorities there cited.

The state of the record in this case makes it improper to return other than a hypothetical answer to the question propounded in said certificate. We therefore answer the same as follows:

If the evidence before the court required a finding that any specific number of cattle unaccounted for were lost by reason of death or straying, appellant was entitled to credit for the value of the same at the rate per head found by the jury, and to that extent the trial court erred in adjudging appellee entitled to recover the value of the entire 189 head of cattle unaccounted for by appellant. If the evidence before the court did not require such finding, then the court did not err in so holding.

The opinion of the Commission of Appeals answering certified questions adopted, and ordered certified to the Court of Civil Appeals.

C. M. CURETON,
Chief Justice.