MON-TEX CORPORATION ET AL. v. LEE POTEET ET UX.

No. 5377. Decided June 28, 1929.
(19 S. W., 2d Series, 32.)

*Clay Cooke* and *Jack Rattikin,* for plaintiffs in error. (*Jerome P. Kearby* on brief on appeal.)

*G. E. Smith,* for defendants in error.

Mr. Justice GREENWOOD delivered the opinion of the court.

Defendants in error, Lee Poteet and Oma Poteet, husband and wife, executed an oil and gas lease, of date May 21st, 1918, to J. A. Fisher and C. W. Gilliland. In consideration of the covenants of the lessees and the release of a mineral lease held by the lessees on other land of the lessors, the latter conveyed and leased unto the lessees a certain 80 acres of land in Comanche County "for the sole and only purpose of mining and operating for oil and gas and of laying pipe lines and of building tanks, power stations, and structures thereon to produce, save and take care of said products." It was expressly stipulated that "this lease shall remain in force for a term of five years from this date, and as long thereafter as oil or gas or either of them, is produced from said land by the lessee." The lease provided, "If no well be commenced on said land on or before the 21st day of May 1919, this lease shall terminate as to both parties, unless the lessee on or before that date shall pay or tender to the lessor or to the lessor's credit in the State Bank at Sipe Springs, Texas, Eighty and no/100 dollars, which shall operate as a rental and cover the privilege of deferring the commencement of a well for 12 months from said date. In like manner and upon like payments or tenders, the commencement of a well may be further deferred for like period of the

same number of months successively. Should the first well drilled on the above described land be a dry hole, then and in that event, if a second well is not commenced on said land within twelve months from the expiration of the last rental period for which rental has been paid, this lease shall terminate as to both parties, unless the lessee on or before the expiration of said twelve months shall resume the payment of rentals in this same amount and in the same manner as hereinbefore provided." The estate of either party was declared to be assignable in whole or in part. The lessees were to deliver to the lessors in tanks or pipe lines the equal one-eighth part of the oil produced from the premises, certain free gas, and $50.00 per year for gas produced from any well used off the premises.

Drilling by the lessees began within the stipulated time. The first well struck oil at a depth of 2794 feet. It was connected with a pipe line and has been producing oil in small but paying quantities ever since, on which royalties have been regularly paid the lessors. The second well also struck oil in small but paying quantities and has continued the production of oil with royalty payments to the lessors. The last year's royalty payments exceeded $300. The first well was commenced in the fall of 1918 and both wells were brought in about 1920. Other wells afterwards drilled from time to time by other parties on nearby tracts have resulted in similar production.

The lessees have spent large sums of money in the development and equipment of the two wells, and, while the wells already drilled are paying propositions for future operation, it is doubtful whether the oil production so far obtained would justify the expense of drilling and equipping additional wells.

The wells on the land leased and in that vicinity do produce considerable wet gas. About January, 1925, the lessees, for a consideration of $25,000, assigned their interests under the lease to the Mon-Tex Corporation. Thereafter, the Mon-Tex Corporation bought ten acres adjoining the eighty acres involved here and mineral rights in some 1500 acres of neighboring land; and said corporation has constructed a casing head gas plant on the ten acres for the utilization of gas, at an outlay of some $100,000. This plant is within sight of the residence of defendants in error. Defendants in error made no objection while the Mon-Tex Corporation proceeded with the construction of the casinghead gas plant.

After the construction of the casinghead gas plant, this suit was brought and prosecuted by defendants in error against J. A. Fisher, C. W. Gilliland, and the Mon-Tex Corporation under pleadings, which, in connection with averments of the insolvency of the Mon-Tex Corporation alone, alleged:

First: The breach by the Mon-Tex Corporation and by said Fisher and Gilliland of the implied obligation to exercise reasonable diligence to keep the producing wells on the eighty acres in proper condition to produce oil or gas.

Second: The breach by the Mon-Tex Corporation and by said Fisher and Gilliland of the implied obligation for the reasonable exploration, development, and production of the oil and gas on the land, after their discovery.

Third: Cessation of the use of the eighty acres for the purpose of the lease and abandonment by the Mon-Tex Corporation and by Fisher and Gilliland of their interests in the eighty acres.

The Mon-Tex Corporation, Fisher and Gilliland, besides a general denial, plead specially that by its express terms the lease was to remain in force as long as either oil or gas was produced from the premises; that oil and gas, in paying quantities, had been and was still being produced from the eighty acres in wells drilled by Fisher and Gilliland, in compliance with the terms of the lease. They further specially plead that defendants in error were estopped to cancel the lease by their acquiescence in the Mon-Tex Corporation's expenditures for improvements on the ten acres of land, for use in connection with operations under the lease.

On evidence which conclusively negatived that the Mon-Tex Corporation or its predecessors had ceased to use the land leased for the production of oil and gas, or had abandoned their interests under the lease, and on evidence which conclusively supported plaintiffs in error's plea of estoppel, but which raised an issue as to whether plaintiffs in error had used reasonable diligence in exploring for and producing the oil and gas on the leased premises, the District Court entered a judgment for the outright cancellation of the lease, and this judgment was affirmed by the Court of Civil Appeals. 13 S. W. (2d) 211.

The only reason given by the Court of Civil Appeals for affirming the judgment of the District Court was that the question involved was the same as that determined by the Commission of Appeals in the case of the W. T. Waggoner Estate v. Sigler Oil Company, 284 S. W., 921, and that it was believed "that the opinion

in that case correctly interpreted and applied the decisions of the Supreme Court bearing upon the question." Associate Justice Funderburk did not concur in the disposition of the case, expressing his own views at considerable length.

The questions presented by this case and by the case of the Waggoner Estate v. Sigler Oil Company are much the same. We have today held that the Commission's opinion in the Waggoner Estate v. Sigler Oil Company case does not correctly interpret or apply the controlling decisions of this Court. The judgment in favor of the Waggoner Estate, entered on the recommendation of the Commission, had already been vacated, and a rehearing ordered, before the Court of Civil Appeals wrote the opinion herein.

Applying to the solution of the questions here presented this Court's final conclusions in the case of the Waggoner Estate v. Sigler Oil Company, the judgments of the District Court and of the Court of Civil Appeals cannot be sustained.

The Supreme Court has never questioned the soundness of its decisions in the case of Texas Company v. Davis, 113 Texas 312, and in the other cases decided the same day, involving questions in the law of oil and gas. The opinion delivered today in the case of the Waggoner Estate v. Sigler Oil Company re-affirms the correctness of those decisions and renders unnecessary an extended discussion of the law of this case.

It will suffice to say that, under the law, as definitely determined in the cases of Texas Company v. Davis, supra, and the Waggoner Estate v. Sigler Oil Company, the rights of the parties hereto must be determined under the following rules:

First: The estate granted by defendants in error to Gilliland and Fisher and their assign was a determinable fee in the gas and oil in the leased premises.

Second: Such determinable fee was not subject to loss, through operation of the limitations expressed in the lease, on account of failure of the lessees or of their assign to exercise reasonable diligence in the exploration or development of the oil and gas in the eighty acres, nor on account of their failure to use reasonable diligence to keep the producing wells in proper condition.

Third: Should it be found that the lessees or their assign failed to exercise reasonable care in exploring, developing, or producing the oil and gas in the leased land, the parties or party in default would be liable to the lessors for the damages thereby sustained. Texas Pacific Coal & Oil Company v. Barker, 117 Texas, 418, 6 S. W.,

(2d) 1037; Freeport Sulphur Company v. American Sulphur Royalty Company, 117 Texas, 439, 6 S. W., (2d) 1045.

Fourth: While the estate granted by the lease could be lost either by abandonment or by cessation of the use of the leased land, by the lessees or their assign, for the purposes of exploring for, developing and producing the oil and gas in the land, yet the uncontradicted evidence in this record negatives the abandonment by said parties of the interests granted to them by defendants in error, and also negatives cessation of use of the land by the Mon-Tex Corporation or its predecessors for the purposes of oil and gas exploration, development and production.

For errors pointed out, the judgments of the District Court and of the Court of Civil Appeals are reversed and this cause is remanded to the District Court for a new trial.

*Reversed and remanded.*