## GIBSON v. SHELDON et al.

### No. 13292.

Court of Civil Appeals of Texas. Fort Worth.

Jan. 10, 1936.

Rehearing Denied Feb. 14, 1936.

Carrigan, Hoffman & Carrigan, of Wichita Falls, for appellant.

Bonner, King & Dawson, of Wichita Falls, for appellees C. P. Sheldon, W. P. Bolding, and Ven-Mex Oil Co.

John Davenport, of Wichita Falls, for appellees C. T. Everts, C. A. Everts, and W. W. Jamison.

BROWN, Justice.

We adopt the statement of the nature and result of this suit from the brief of appellant as follows:

On January 23, 1935, appellant, S. P. Gibson, instituted this suit against appellees, C. P. Sheldon, W. P. Bolding, Ven-Mex Oil Company, a Texas corporation, C. A. Everts, C. T. Everts, and W. W. Jamison. There were two counts in appellant's petition. The first count was in ordinary form of trespass to try title by appellant against appellees for the recovery of the following described tracts of land situated in Wichita county, Tex., to wit:

First tract: South one-half of block No. 301, Waggoner Colony lands, containing 80 acres of land.

Second tract: All of block No. 302 of the Waggoner Colony lands, containing 160 acres of land.

In the second count appellant alleged that he was the owner in fee simple of the 240 acres of land described in the first count of the petition, and was entitled to the possession of the same, and the appellees were unlawfully setting up some kind of claim to this property in opposition to the rights of the appellant, and casting a cloud upon the title of appellant to said premises; that on or about June 8, 1929, appellant and his wife executed to appellee C. P. Sheldon an ordinary oil and gas lease on said 240 acres of land; that said lease was for a term of one year; that the lease provided for the usual one-eighth royalty, and if no well be commenced on the land on or before the 8th day of June, 1930, it should terminate as to both parties; that the appellees are asserting a claim to said premises under and by virtue of said lease; that the appellees and each of them have abandoned said premises, and have made no effort to develop the same for more than four years prior to the filing of this suit. That appellant had demanded of appellees the development of said premises, which they had failed to do, and that the claim of the appellees on said premises under said lease cast a cloud upon appellant's title and prevented him from having said premises developed for oil. That said lease has terminated, and has been forfeited and abandoned. Appellant prayed under the first count of his petition that he be decreed judgment for the possession of said premises, and under the second count of the petition that he have judgment against the appellees and each of them for a cancellation of the lease described in the second count of the petition, and for costs and general relief.

Appellees C. P. Sheldon, W. P. Bolding, and Ven-Mex Oil Company filed a joint answer to appellant's petition, asserting a general exception, a general denial, and a plea of not guilty.

Appellees C. A. Everts, C. T. Everts, and W. W. Jamison filed an answer herein, alleging a disclaimer on the part of C. A. Everts as to any ownership in the oil and gas lease described in appellant's petition.

C. T. Everts and W. W. Jamison disclaimed any interest in any of the premises described in appellant's petition save and except the title to the said oil lease on the southwest 40 acres of subdivision No. 302, Waggoner Colony lands.

That said last-named appellees were producing oil from two wells on said premises and appellant was receiving his royalty therefrom; and the said appellees, C. T. Everts and W. W. Jamison, disclaimed any interest in any other land described in appellant's petition.

Appellees C. T. Everts and W. W. Jamison prayed that they be decreed the owners of the said oil and gas lease on the southwest 40 acres above described.

Appellee C. A. Everts prayed that no judgment be rendered against him.

On March 20, 1935, the court, without the intervention of a jury, rendered judgment for appellees; that at the time of the rendition of the judgment the court rendered an opinion that the oil and gas lease in controversy was valid and subsisting, and in force, and that the appellant was not entitled to a cancellation of said lease, but that subject to the lease the appellant is the owner of said land and entitled to the possession thereof.

The court further decreed that the appellant recover title and possession of the land described in his petition against all of the appellees, "but subject to said oil and gas lease on said land described and referred to in the second count of plaintiff's said petition, but that plaintiff be denied cancellation of said lease or any part thereof," to which judgment the appellant then and there excepted and gave notice of appeal to this court.

The court prepared and filed his findings of fact and conclusions of law, and the appellant then and there in open court excepted to said findings of fact and conclusions of law. Appellant timely filed his appeal bond, and now prosecutes his appeal to this court.

The findings of fact and conclusions of law filed by the trial court are as follows:

"Findings of Fact.

"1. I find that on the 8th day of June, 1929, the plaintiff, S. P. Gibson, and wife, Bettie Gibson, executed, duly acknowledged, and delivered to defendant, C. P. Sheldon, an oil and gas lease, the material parts of which, omitting signatures and acknowledgments, were as follows, towit:

" 'Agreement made and entered into on the 8th day of June, 1929, by and between S. P. Gibson and wife, Bettie Gibson, of Hunt County, Texas, hereinafter called lessor (whether one or more), and C. P. Sheldon, hereinafter called lessee:

" 'Witnesseth: · That the said lessor, for and in consideration of Ten and no/100 Dollars, cash in hand paid, the receipt of which is hereby acknowledged, and of the covenants and agreements hereinafter contained on the part of the lessee to be paid, kept and performed, have granted, demised, leased and let, and by these presents do grant, lease and let unto the said lessee for the sole and only purpose of mining and operating for oil and gas and of laying pipe lines and of building tanks, power stations, and structures thereon to produce, save and take care of said products, all that certain tract of land situated in the County of Wichita, State of Texas, described as follows, towit:

" 'The South eighty (80) acres of subdivision Number 301 and all of Sub. 302, Waggoner Colony Lands, and containing 240 acres of land, more or less.

" 'It is agreed that this lease shall remain in force for a term of one year from this date,. and as long thereafter as oil or gas, or either of them is produced from said land by lessee.

" 'In consideration of the premises the said lessee covenants and agrees:

" '1st. To deliver to the credit of lessor, free of cost, in the pipe line to which he may connect any wells, the equal one-eighth part of all oil produced and saved from the leased premises.

" '2nd. To pay to the lessor ⅛th of net proceeds at mouth of the well, each year, for the gas from each well where gas only is found, while the same is being used off the premises, and lessor to have gas free of cost from any such well for all stoves and all inside lights in the principal dwelling house on said land during the time by making their own connections with the well at their own risk and expense.

" '3rd. To pay lessor for gas produced from any oil well and used off the premises at the rate of ⅛th of net proceeds at mouth of well per year, for the time during which such gas shall be used, said payments to be made each three months.

" 'If no well be commenced on said land on or before the 8th day of June, 1930, this lease shall terminate as to both parties.

" 'If said lessor owns a less interest in the above described land than the entire and undivided fee simple estate therein, then the royalties and rentals herein provided for shall be paid the said lessor only in proportion which their interest bears to the whole and undivided fee.

" 'Lessee shall have the right to use, free of cost, oil, gas and water produced on said land for all operations thereon, except water wells of lessor.

" 'When requested by lessor, lessee shall bury any pipe line below plow depth.

" 'No well shall be drilled nearer than 200 feet to the house or barn now on said premises without the written consent of the lessor.

" 'Lessee shall pay for damages caused by all operations to growing crops on said land.

" 'Lessee shall have the right at any time to remove all machinery and fixtures placed on said premises, including the right to draw and remove casing.

" 'If the estate of either party hereto is assigned—and the privilege of assigning in whole or in part is expressly allowed—the covenants hereof shall extend to their heirs, executors, administrators, successors, or assigns, but no change in the ownership of the land or assignment of rentals or royalties shall be binding on the lessee until after the lessee has been furnished with a written transfer, or assignment, or a copy thereof; and it is hereby agreed that in the event that this lease shall be assigned as to a part or as to parts of the above described lands and the assignee or assignees of such part or parts shall fail or make default in the payment of the proportionate part of the rents due from him or them, such default shall not operate to defeat or affect this lease so far as it covers a part or parts of said lands upon which the said lessee or any assignee thereof shall make due payment of said rental.

" 'Lessor hereby warrants and agrees to defend the title to the lands herein described and agrees that the lessee shall have the right at any time to redeem for lessor, by payment, any mortgages, taxes, or other liens on the above described lands, in the event of default of payment by lessor, and be subrogated to the rights of the holder thereof.

" 'In testimony whereof, we sign, this the 8th day of June, 1929.'

"2. I find that on June 12, 1929, the foregoing oil and gas lease was duly recorded in the deed records of Wichita County, Texas.

"3. I find the 240 acres of land covered by said lease is a rectangular shaped tract of land, being the south one-half of said Subdivision No. 301 and all of Subdivision No. 302 of the Waggoner Colony Lands in Wichita County, Texas; each of said subdivisions containing 160 acres of land in a square form, and that said subdivision No. 301 lies adjacent to and immediately north of said Subdivision No. 302, as shown by the following plat:

```
         North
 . . . . . . . . . . .
 .                   .
 .  . . . . . . . . . WAGGONER  COLONY  LANDS
 .        301        .
 .      80 acres     .
West  . . . . . . . . . .  East
 . 40       . 20 A .
 .           . . . . .
 . A         . 20 A .
 . . . . 302 . . . . .
 . 40       . 40    .
 . A        . . A   .
 . . . . . . . . . . .
         South
```

"4. I find that on June 28, 1929, said lessee, C. P. Sheldon, conveyed to W. P. Bolding by an instrument in writing an assignment of said oil lease in so far as it covers the Southeast one-fourth of Subdivision No. 302, containing 40 acres of land; it was orally agreed by and between W. P. Bolding and the said C. P. Sheldon that said C. P. Sheldon would retain a half interest in said lease as to said 40 acres of land, and that is the situation of the title to said lease at the present time.

"I further find that a well for oil and gas was drilled on this 40 acres by said Sheldon and Bolding within the primary term of the lease, which was a dry hole, and that well has been abandoned as a dry hole since prior to April 1, 1930, and that no other well for oil or gas or development for oil or gas has been performed upon said 40 acres since the first day of April, 1930, and that said Bolding and Sheldon are still claiming said 40 acre lease as being valid.

"5. I find that by regular assignment C. P. Sheldon conveyed to the Ven-Mex Oil Company by an assignment dated July 10, 1929, an undivided one-half interest in the south 80 acres of said Subdivision No. 301 and the north one-half of the northeast 40 acres of said Subdivision No. 302; that said assignment covering in all 100 acres of land out of the tract contained in the original oil and gas lease as aforesaid, and there has never been any development for oil or gas on said 100 acres, and no well for oil or gas has ever been drilled on said 100 acres since the execution of said lease.

"6. I find that on July 18, 1929, C. P. Sheldon conveyed to Harrell and Ports all his right, title and interest in said lease as to the northwest quarter of said Subdivision No. 302, and that Harrell and Ports conveyed all their rights in said lease as to said Northwest Quarter of Subdivision No. 302 to Clerk and Cowden, and that Clerk and Cowden assigned their interest in said lease as to said Northwest Quarter of said Subdivision No. 302 to the Ven-Mex Oil Company of Texas, which assignment was in writing and dated August 21, 1929. That there has never been any well drilled on this 40 acres by any one, and no development has ever been had on said 40 acre tract.

"7. I find that on July 25, 1929, C. P. Sheldon conveyed to the defendants, C. A. Everts and W. W. Jamison, all his right, title and interest in and to said lease so far as it covers the Southwest Quarter of said Subdivision No. 302, and that the lease as to said 40 acres is now owned by defendants, W. W. Jamison and C. T. Everts.

"That in the primary term of said lease said Everts and Jamison drilled three oil wells close to the south line of said 40 acres as aforesaid, one of which has been abandoned as a dry hole, and the other two wells are now being operated by said C. T. Everts and W. W. Jamison, and are producing oil, which is being regularly marketed and sold, and the plaintiff has been regularly receiving his one-eighth royalty from said two wells.

"I find that three oil wells were drilled on said 40 acres owned by said Everts and Jamison, as aforesaid, on said lease acquired by them from C. P. Sheldon, and that one of said wells was abandoned; that

said oil well which was abandoned on said 40 acres last mentioned, produced oil for approximately a year and turned to salt water, and was plugged and abondoned.

"8. I find that all five of the said wells drilled on this lease were drilled to approximately the depth of 1900 feet, which was the known oil sand in that immediate vicinity, and the cost of drilling and equipping said wells for production was between $30,-000.00 and $35,000.00.

"9. I find that the three oil wells drilled upon the 40 acres of land known as the southwest quarter of said Subdivision No. 302 were drilled within the primary term of said lease, and before April 1, 1930. That two of said wells have been continually operated by the defendants, Everts and Jamison, ever since the same have been drilled, and said two wells are now producing about eleven barrels of oil per day, and that plaintiff has been continuously receiving his one-eighth royalty from said wells so drilled on said 40 acres of land as aforesaid, since prior to April 1, 1930.

"10. I find that the plaintiff, S. P. Gibson, was the owner in fee of the 240 acres of land described in said lease at the time the plaintiff and his wife made, executed and delivered said oil and gas lease to C. P. Sheldon as aforesaid, and that he is still the owner of same subject to said lease.

"11. I find that during the years 1930, 1931, 1932, and 1933, and a portion of 1934, there was a depression in the oil business, the price ranging from seventy-five cents down to twenty-five cents per barrel, but at the time of the trial the price has risen to approximately $1.00 per barrel.

"I find that more than a year prior to the trial all wells in this field were under proration by order of the Railroad Commission of Texas, by which they were limited to daily gross production of ten barrels of oil per day.

"13. I find that C. P. Sheldon, the lessee in said oil lease above described, has no interest in the Northwest Quarter and the Southwest Quarter of said Subdivision No. 302, and has no interest whatsoever in the south 20 acres of the northeast quarter of said Subdivision No. 302, and he disposed of all his interest in said three tracts of land prior to the first of January, 1930, as aforesaid, and that he has an undivided half interest in the Southeast Quarter of said Subdivision No. 302 and the north half of the Northeast Quarter of said Subdivision No. 302, and that he has an undivided one-half interest in said lease as to the south half of said Subdivision No. 301.

"14. I find that none of the defendants have any present intention of further developing said 240 acre lease as described in said oil and gas lease as aforesaid until conditions change so as to justify further development.

"15. I further find that the plaintiff has made repeated demands upon each of the defendants for further development on said premises, and that this demand was made in writing as far back as January, 1934.

"16. I find that at or about the same time the above mentioned wells were drilled two producing offset wells were drilled on the south Block No. 302, approximately offsetting the two continuously producing wells drilled by Everts: that a dry hole was also drilled offsetting the Bolding well to the south on the adjoining lease, and that small producing wells were drilled, one offsetting the Bolding well on the adjoining lease to the East, and one offsetting on the block cornering with the Southeast corner of Block No. 302. I find also that dry holes were drilled offsetting the Everts producing wells, one on the adjoining lease on the West, and one on the adjoining block cornering with the Southwest corner of Block No. 302. I find that no other offset wells were drilled to any part of the lease in question, but the offsets that were drilled were all to the depth of the known sand above mentioned. I find that a few years prior to the execution of the lease a dry hole was drilled by Everts to the approximate depth of 2000 feet in the northwest corner of Block 302.

"I find that all of the above mentioned drilling except the Everts dry hole last mentioned was done during the primary term of the lease in question, the last drilling being done during January or February 1930, and no operations have been carried on on the lease by said lessee or his assigns since said date except to operate the Everts wells. I find that said wells came in for an initial production of about 150 barrels per day per well and settled down to the present rate of production after approximately two years of operation.

"17. I find that there are no other offset wells to said lease other than those as above stated, and that no dry holes have been drilled offsetting said lease since the same was given except as hereinbefore stated.

"I find that the plaintiff, C. P. Sheldon, was the owner of said land at the time said Sheldon lease was executed and delivered, and that he is now the owner of said land subject to said lease.

### "Conclusions of Law.

"1. I conclude that the defendants, Everts and Jamison, have reasonably developed that portion of the lease jointly owned by them, being the Southwest Quarter of Block No. 302, but I conclude that the other defendants have not reasonably developed the other portions of said lease.

"I conclude that the defendants have not abandoned said lease, neither has it terminated nor forfeited, and that the plaintiff is not entitled to a cancellation of said lease or any part thereof, and that judgment therefore should be as rendered herein.

"Plaintiff in open court then and there excepted to the above findings and conclusions of Law."

It will be seen that the appellant sought in the instant case in his first count to recover the lands in question through the medium of a trespass to try title suit, and, in the alternative, sought a cancellation of the lease. We are of the opinion that the issue here involved is settled by the decisions of the Supreme Court in the cases of Mon-Tex Corporation v. Poteet, 118 Tex. 546, 19 S.W.(2d) 32, and W. T. Waggoner Estate v. Sigler Oil Co., 118 Tex. 509, 19 S.W.(2d) 27, and the cases cited in said opinions. These cases hold that the estate granted to the original lessee and his assigns was a determinable fee in the gas and oil in the leased premises, but that such fee was not subject to loss, through operation of the limitations expressed in the lease on account of failure of the lessees or of their assigns to exercise reasonable diligence in the exploration or development of the oil and gas on the premises, nor on account of their failure to use reasonable diligence to keep the producing wells in proper condition. But that should it be found that the lessees or their assigns failed to exercise reasonable care in exploring, developing, or producing the oil or gas from the leased lands, the party or parties in default would be liable to the lessors for such damages as were thereby sustained.

We see no material difference between the covenants and conditions of the oil and gas lease before us and those leases which were construed by the Supreme Court in the cases cited. We therefore hold that the judgment of the trial court in refusing appellant, plaintiff below, the relief prayed for should be in all things affirmed, but without prejudice to appellant's right to sue for damages, if any may have been sustained by him.

Judgment affirmed.

### On Motion for Rehearing.

Our attention having been called by appellees C. T. Everts, C. A. Everts, and W. W. Jamison that we affirmed the judgment of the trial court in so far as it covers the south 20 acres of the northeast quarter of Waggoner Colony survey No. 302 as being subject to and covered by the oil and gas lease in question, when said appellees had disclaimed all interest therein.

We therefore amend the judgment of this court and here reverse and render judgment in favor of appellant as to said south 20 acres of the northeast quarter of Waggoner Colony survey No. 302.

In all other respects, the motion for a rehearing is overruled.