**DE FLORES et al. v. SMITH et al. ***
(No. 6637.)

(Court of Civil Appeals of Texas. San Antonio. Dec. 14, 1921. Rehearing Denied Jan. 11, 1922.)

**1. Mines and minerals ⊜⇒78(1)—Lessee entitled to complete contract when doing in good faith everything reasonably necessary.**

Lessee is entitled to complete his contract when he is doing in good faith everything reasonably necessary to comply therewith.

**2. Mines and minerals ⊜⇒78(1)—Time held not to be of essence of a lease.**

Where the main purpose of an oil lease as expressed therein was to require due diligence in development within the two years it was to remain in force, unless lessee paid a rental to defer for three months the period of one year for commencing a well and further payments every three months for further extensions, time was not of the essence of the contract.

**3. Mines and minerals ⊜⇒58—Acceptance of delay rent under lease held to waive provision as to consideration.**

Where lessor accepted rent delaying time for development under a lease, he waived the provision as to the consideration, and for that reason his contention in a suit to cancel the lease that the contract was for a nominal consideration, and was therefore unilateral, and not binding, must be overruled.

**4. Mines and minerals ⊜⇒78(1)—Lessee commencing well within time for which rental paid held not in default.**

Under an oil lease for two years and as long thereafter as oil was produced, which provided that, if a well was not commenced within one year, the lease should terminate unless the lessee paid $600 each three months for the privilege of deferring the commencement of a well, where the lessee made the required payments up to the expiration of the two years, and shortly before the expiration of the two years had made preparations for drilling and commenced drilling operations, it was not in default, though another provision of the lease required due diligence to be exercised in the development of any oil field, especially where the lessors, when they accepted the last payment, must have known that a well could not be commenced and completed by the expiration of the two years.

**5. Reformation of · instruments ⊜⇒6—Reformation of married woman's oil lease not contrary to statutes as to execution of instruments.**

Where an oil lease executed by a husband and wife and dated August 3, 1918, was for two years and as long thereafter as oil and gas was produced, but . provided that, if a well was not commenced on or before August 1, 1919, the lease should terminate unless the lessee paid $600 every three months for the privilege of deferring commencement of a well, the reformation of the lease to provide for termination on August 3, 1919, instead of August 1st, if a well was not commenced, did not violate the law prescribing the formalities for the execution of written instruments by married women, the purpose of the reformation being to make the instrument speak the truth, and the expiration of the term of the lease not being effective.

**6. Reformation of instruments ⊜⇒6—Rights of married women not violated by reformation.**

The exercise of the powers of a court of equity to correct mutual mistakes, though used in cases where married women are parties, does not impair their rights or violate any established principle of law or equity, but tends to promote the ends of justice and to discourage and prevent fraud.

**7. Mines and minerals ⊜⇒78(1)—True date for commencement of well held immaterial where time had been extended by payments.**

Under an oil lease dated August 3, 1918, and providing that, if a well should not be commenced on or before August 1, 1919, the lease should terminate unless the lessor paid $600 every three months for the privilege of deferring the commencement of a well, where the rent had been paid and accepted so as to extend the time beyond that fixed, and long after that date the parties had recognized the lease as in force, it was immaterial whether the date should have been August 1st or August 3d; the parties by their acts and conduct having waived its provisions as to such date.

**8. Mines and minerals ⊜⇒78(5)—Right to terminate lease at expiration of period where well not completed held waived.**

Under an oil lease for two years and as long thereafter as oil and gas should be produced, with a provision that, if a well was not commenced within one year, the lease should be terminated unless the lessee paid $600 every three months for the privilege of deferring the commencement of a well, where such rentals had been paid and accepted, and without fraud or bad faith drilling had commenced a few days before expiration of the two years, and lessors when they received the last payment must have known that a well could not be commenced

---

⊜⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error dismissed for want of jurisdiction March 1, 1922.

and completed before the expiration of the two years, but stood by and permitted preparations for drilling and actual drilling to be commenced, they waived any right to forfeit and terminate the lease at the expiration of the two years.

Appeal from District Court, Hidalgo County; Hood Boone, Judge.

Suit by Eloisa V. de Flores and another against Dayle L. Smith and others. From judgment for defendants and that a lease contract from plaintiffs to defendants should be reformed, plaintiffs appeal. Affirmed.

Canales & Davenport, of Brownsville, for appellants.

Huggins, Kayser & Liddell, of Houston, for appellees.

COBBS, J. This suit is to remove the cloud upon title to certain lands situated in Hidalgo county, caused by an oil lease executed August 2, 1918, by appellant, on the ground that it was without consideration and void, and lapsed by its express terms at the end of two years from its date, unless extended further by the performance of a certain condition subsequent—that is by paying certain rents to extend the time for beginning the boring for a well.

The defense of appellees was that all terms of the contract had been performed and it was still in full force and effect. Appellees also sought to reform the contract of lease in respect to a certain mistake in a date, which in the body of the contract read August 1, 1919, so as to have it read August 3, 1919, the true date actually agreed on.

The trial was by the court without the intervention of a jury, and the judgment was that the appellant take nothing by her suit, and the lease contract was reformed as to the date as prayed for by appellee.

The court filed special findings of fact and conclusions of law. The facts found were in favor of appellee. There is also filed a statement of all the facts.

The real question presented by a number of assignments is to the effect that under the terms of the lease it expired by its own terms by failure to comply therewith, and was not thereby extended beyond the two years by the payment of rents required, the land being leased for the period of two years and thereafter so long as oil or gas, or either, is produced, for a period of ten years, provided the payment of rental for delay in development would extend the lease beyond the period of two years, but the failure to produce oil or gas, or either, on the leased premises, or commencing a well within the time, justified appellant in bringing the suit, though brought within a few days after the expiration of the two years, and the payment of previous rents did not extend the lease beyond the time; that the contract was unilat-

eral, because the consideration was nominal and thereunder it was optional with appellee to prospect for oil and gas, and thereby not bound to perform anything, and so, being without consideration and unilateral, the appellee at his option could avoid it.

The contract begins on the 3d day of August, 1918, and "shall remain in force for a term of two years from its date, and as long thereafter as oil or gas, or either of them, is produced from said land by the lessee," who agrees "to use due diligence in the development of any field found to secure the best production, and if any tract of land not developed in 10 years from this date shall revert to lessor." The contract further provides:

"If no well be commenced on said land on or before the 1st day of August, A. D. 1919, this lease shall terminate as to both parties, unless the lessee on or before that date shall pay or tender to the lessor's credit in the First State Bank at McAllen, or its successors, * * * $600.00, which shall operate as a rental to cover privilege of deferring the commencement of a well for three months from said date * * * like payments or tenders; the commencement of a well may be further deferred for like periods of same number of months successively."

The court found machinery for the purpose of drilling a well was placed on the ground prior to August 3, 1920, and on that date preparation for and drilling had begun about the first, but no oil or gas was ever produced on any of the land described in the contract: found that appellee continued the drilling of said well since August 3, 1920, in an adequate and diligent manner until the trial of this cause, and that appellants were satisfied with the time of the commencement of drilling operations and the manner in which the same have been conducted since, and the desire to cancel the contract is not because they are dissatisfied with the manner in which the development of the premises for oil and gas has been made under the contract nor any alleged invalidity or noncompliance therewith, but because appellee is of the opinion that the lease contract constituted such cloud on the title as to interfere with the sale of the same.

The court also found the four quarterly rentals provided for in the contract deferred the commencement of a well until August 3, 1920, and that on July 26, 1920, the appellees were making preparations to commence a well, had rotary drilling rig set up over the prospective hole, water connections made, had placed pipe and material on the premises, and were digging the slush pit.

The contract also provided that the down payment covers not only the privilege granted to the dates when first rental is payable, but the lessee's option of extending that period as aforesaid and any and all other rights conferred.

[1] As the court has found that no well was drilled at all on the property, but that one was commenced before August, 1919, we lay out of sight any consideration of that part of the contract which has reference to continuing the contract in case the first one dug be a "dry well"; for we do not think there is anything in appellees' contention, for that reason alone, that any rights were preserved, or, per contra, that any were lost. We have heretofore sustained the right of one holding an oil lease on land to complete his contract where in good faith he was doing everything reasonably necessary to comply with his contract, though forfeiture in these kind of cases is favored. Clutter v. Wisconsin-Tex. Oil Co., 233 S. W. 322.

[2] It seems that the main purpose in this lease was to require diligence in the development of any gas or oil field found so as to secure the best production within the period of two years, which contract by its terms terminated in two years, unless on or before August 3, 1919, appellee pays $600, which operated as a rental privilege of deferring the commencement of a well for three months from said date and in like manner subsequent rental payments extended the commencement of the well for further like periods for the same number of months successively. Time, therefore, was not of the essence of the contract. There are no doubtful words of obscurity in this contract that need any special effort to determine the meaning and intention of the parties.

[3] As to the insistence of appellant that the contract was for a nominal consideration of $10, and that the contract was unilateral and not binding, the contention must be overruled for the reason that appellees waived that provision by accepting thereafter the sums of money paid from time to time for the extension of the time of the commencement of a well during the two-year period, and, when suit was brought to cancel the contract and remove it as a cloud upon the title, the appellees were in no default.

[4] As appellees complied with the express terms of the lease by paying the rental money to extend the time, which appellant accepted, they secured "the privilege of deferring the commencement of a well." True, the terms of the contract itself required due diligence in the development of any oil field and required the commencement thereof within the first year; yet it likewise relieved the lessee from that condition by permitting the payment of rentals from time to time as that deferred "the commencement of a well for three months. * * * In like manner and upon like payments or tenders the commencement of a well may be further deferred for like periods of the same number of months successively."

We do not believe the appellee was in default or failed to comply with the terms of the lease. Under the peculiar terms of this lease and under the facts presented in this case the appellee should be permitted to go on with his contract to diligently develop the oil or gas field in accordance with the provisions of the contract. The court has found all the material facts in favor of appellee which finding is supported by the evidence. McCallister et al. v. Tex. Co., 223 S. W. 859; Texas Co. v. Curry, 229 S. W. 643; Clutter v. Wisconsin-Texas Oil Co., 233 S. W. 323.

The contract in this case was not an absolute lease for two years. It was on the condition subsequent that a well be commenced, and in like manner the time for commencement might be further extended from time to time by the payment of rents, and then "any tract of land not developed in ten years shall revert to the lessor." There was therefore an express lease for one year; nothing else required to be done the first year to secure the right for that period of time. Thereafter the option was given to extend the commencement of a well by the payment of $600 for the period of three months. These payments were made from time to time as provided up to the last payment, which deferred the commencement of a well up to the termination of the lease. When appellant accepted the last payment, it must have been known to appellant that a well could not be commenced and completed by August 3, 1920, so the payment and the acceptance of this money extended the time for commencement of the well within the meaning and terms of the contract and secured to appellees full, complete, and irrevocable right and authority to complete the contract.

By giving this lease a reasonable and equitable interpretation, we think, by paying the rental, it extended the commencement of the well and by its terms authorized the lessee to perform the other conditions; that is, for the "development of oil or gas to be produced with due diligence in the development of any field found to secure the best production for ten years."

We do not think there is anything in appellant's proposition or argument that the lease was without consideration because only $10 was paid, or that it devolved on appellee to show its payment. If there had been, the appellant is in no position to complain, because, as found by the court, the rent was duly paid and received for the two-year period, and appellee had, as further found by the court, commenced, within the meaning of the contract, on the 26th day of July, 1920, to drill a well, had rotary rig set up over the prospective hole, water connections made and pipe placed and material on the premises, even digging the slush pit, and were actually drilling on August 3, 1920, and all these details and preparations were preliminary to and for the bona fide purpose of developing the land for gas and oil purposes under the lease, and furthermore found had

continued drilling the well in an adequate and diligent manner up to the trial of this case.

[5] Appellant complains that the court erred in so reforming the lease contract as to make it read August 3, instead of August 1, 1919, the date expressed in the contract executed by Mrs. Flores, one of the appellants, a married woman, because, being a married woman, the law requires her execution of written instruments to be explained to her by the officer taking her acknowledgment separate and apart from her husband, by the terms of which only is she bound, and oral testimony will not be heard to vary its terms by showing an intent on the part of the married woman to execute any other or different contract than that explained to her by the notary and acknowledged by her.

There is no contention that the lease does not express the exact terms of the contract, other than the date when the lessee is to commence the well, as written out in the contract on or before the 1st day of August, 1919. But it must be borne in mind the date when the agreement was made, recited in the instrument itself, was on August 3, 1918, and there is no evidence to the contrary. She joined her husband in the execution of this lease on that day, and the notary properly took her separate acknowledgment thereto. Her testimony is in clear support of the terms of the instrument which provided for a two-year lease from that date, and she understood it. Indeed, it does not appear to us that a reformation of the contract was necessary to make it speak the different date, for it has been shown appellee paid the money at the proper time to secure the right to commence the well beyond that date, whether it be held to be August 1st or August 3d. The married woman, with her husband joining, executed this contract. The purpose of the testimony was to make it speak the truth. It in no wise undertook to change or vary the terms of the written contract; it was in support of it. While the rules of construction of written instruments affecting the separate lands of married women must be viewed with great strictness in respect to its execution, there does not appeal to us any reason for adopting any different rule of construction to determine the effect of a married woman's agreement as made and understood by her from that rule of construction employed in administering law, justice, and equity between man and man. No changes were attempted to be made to or read into the contract that were contrary to or repugnant to the woman's clear admission and understanding as to what were the terms of the lease which she executed.

Other than the error in the date, there is no question raised but that the contract was properly executed in all the other particulars and essentials. At most, the effort at reformation is to correct a misdescription in a date erroneously written in the body of the instrument that imposed no additional obligation upon her that she did not understand other than what she voluntarily assumed in the execution of the alleged so-called defective instrument.

[6] The exercise of the powers of a court of equity to correct mutual mistakes, though used in cases where the married women are parties, in no way impairs the rights of married women or violates any established principle of law or equity, but tends to promote the ends of justice and discourages and prevents fraud. Avery v. Hunton Bros., 23 Tex. Civ. App. 353, 56 S. W. 210; Durham v. Luce, 140 S. W. 850. The date sought to be corrected to read 3d of August instead of, as written, August 1, 1918, has nothing to do with the expiration of the term of the lease which is dated the 3d day of August, 1918, and the day of its admitted execution, and by the express terms of the contract it expressly says is to be "in force for a term of two years from this date," which would expire on the 3d day of August, 1920, unless extended as provided therein beyond that period to 10 years.

[7] As the date of August 1, 1919, as written therein, has reference to the day when the first well should be commenced, and as the rent was paid and accepted so as to extend the commencement of the well beyond that period of time, it is immaterial whether that date was corrected or not, for the contract, as recognized by the parties, was in force long after that date had passed, and consequently its provisions as to that were waived by the acts and the conduct of the parties and the construction given by them to the entire contract and its provisions as shown by the findings of the court and the testimony.

[8] There is no merit in the contention that the contract terminated because no rentals were tendered or accepted after the termination of the two-year period. The appellees, having paid the necessary rentals and commenced to bore the well a couple of days before its termination, were within the letter and spirit of the contract. There is no claim of fraud or bad faith, and the acts of appellants were such as to constitute a waiver to prevent appellees from proceeding beyond the definite period fixed. And it was a waiver of the right to claim a forfeiture at the end of the two-year period, or to require notice to the appellee as reasonable time thereafter within which to comply with the lease before a forfeiture. So also the acts of the parties, their standing by and in giving aid and encouragement to the appellees in the manner stated, and finally in the preparation for the drilling and expending money and in the actual commencement, must be held a waiver of any rights, if any, to forfeit and terminate the lease as now sought. We do not think the facts present a case for

the termination of the lease. It should be placed upon surer grounds than that there is an apparent mistake in a date or vagueness in its meaning or that it is uncertain or obscure. Decker v. Kirlicks, 110 Tex. 90, 216 S. W. 385.

We have carefully considered all the assignments, and read and considered all the authorities cited that we have been able to secure, and have reached the conclusion that there is no reversible error assigned, and the judgment is accordingly affirmed.