## HUMPHRYS v. SKELLY OIL CO.
### No. 7944.

Circuit Court of Appeals, Fifth Circuit.
June 3, 1936.

Wales H. Madden, of Amarillo, Tex., for appellant.

Jas. B. Dooley and D. H. Culton, both of Amarillo, Tex., and Alvin F. Molony, of Tulsa, Okl., for appellees.

Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

The suit was at law for premises appellant, plaintiff below, had as lessor leased to appellee Skelly Oil Company, one of the defendants below. The claim of title pleaded specially was that drilling operations Skelly relied on to hold the lease had been commenced after the right to drill had been extinguished by expiration of the lease. All pertinent facts having been pleaded by plaintiff, the defense that the commencement of drilling operations before the expiration of the lease and their diligent prosecution thereafter had kept the lease in force was presented by demurrers. These sustained, and plaintiff refusing to amend, there was a judgment dismissing the action.

One assignment of error is relied on to bring these rulings up, that the court erred in concluding that the lease had been kept in force in accordance with its terms. These are the facts.

The oil and gas lease in question was dated February 20, 1923. Paragraphs 2, 6, and 14 are the pertinent provisions:

"2. This lease shall remain in force for a term of ten (10) years and as long thereafter as oil, gas, casinghead gas, casinghead gasoline, or any of them is or can be produced."

"6. If operations for the drilling of a well for oil or gas are not commenced on said land on or before one year from this date, this lease shall terminate as to both parties, unless the lessee shall, on or before one year from this date, pay or tender to the lessor or for the lessor's credit in the American National Bank at McLean, Texas, or its successors, which bank and its successors are the lessor's agent, and shall continue as the depository of any and all sums payable under this lease, regardless of changes of ownership in said land or in the oil and gas, or in the rentals

to accrue thereunder, the sum of One Hundred Sixty and No/100 Dollars ($160.00) which shall operate as rental and cover the privilege of deferring the commencement of drilling operations for a period of one year. In like manner and upon like payments or tenders, the commencement of drilling operations may be further deferred for like periods successively. All payments or tenders may be made by check or draft of lessee, or any assignee thereof, mailed or delivered on or before the rental paying date."

. "14. Notwithstanding anything in this lease ·contained to the contrary, it is expressly agreed that if lessee shall commence drilling operations at any time while this lease is in force, this lease shall remain in force and its term shall continue so long as such operations are prosecuted, and if production results therefrom, then as long as such production continues."

Prior to February 20, 1933, on, to wit, February 15, appellee had in good faith instituted, and caused to be commenced on the leased premises, operations directed to the drilling of a well thereon for oil and gas. These operations, conducted with reasonable diligence and continuity thereafter, had progressed by March 15 to the point of completing the work of rigging up and spudding in the well. On that date physical drilling, that is, the penetration of the bit into the ground to make the well, had commenced, and on August 9, 1933, the well was completed as a producer.

Appellant relies for reversal on two main points. The first point is that paragraph 2 of the lease fixes a primary term of ten years during which the lease could be kept in force without production, by paying rentals or the conduct of drilling operations, as provided in paragraphs 6 and 14. He insists that with the ending of that term the lease would expire, "unless oil, gas, etc. is or can be produced." He insists that, if the ·provisions of paragraph 14 be given the effect appellee contends for, of extending the lease, this would be to enlarge the term or habendum clause by a separate and independent stipulation. He argues therefore that paragraph 14 should be construed as applying within, not beyond, the ten-year term, and as supplementing and making more specific the provisions of paragraph 6 for drilling in lieu of rental during the primary term; that, as the ten-year term could not be extended by the payment of rental, so it could not be by drilling operations not resulting in production before its expiration.

His second point is that, if paragraph 14 be given the effect of extending the term if drilling operations are commenced within it, this will not save the lease, for what was done by appellee while the lease was in force was not the commencement of "drilling operations," but merely the commencement of "operations for drilling"; that the term "drilling operations" used in this clause refers to and means the physical operation of drilling, that is, the penetration of the bit in forming the well hole.

Appellees assert with confidence that neither of appellant's propositions are meritorious. As to the first, they insist that, under the rule of law that the contracts parties make will be given the plain and simple meaning their words import, the definite and clear meaning of the provisions of paragraph 14 leave no room for construction or interpretation, and the fact that these provisions are not contained in the paragraph fixing the term is of no importance. They insist that, appellees having, while the lease was in force and as provided in it, commenced drilling operations and, continuing their prosecution, obtained production, the lease continued to remain in force just as it would have continued had the successful drilling operations been not only commenced but completed before the ten years ended.

On the second point they insist that the terms of the lease, taken as a whole, make it perfectly clear that the principal apparent purpose of the parties, the purpose, therefore, which must be given effect, Cocke v. Vacuum Oil Co. (C.C.A.) 63 F. (2d) 406, was that the lease could be kept in force by the payment of rentals during the ten years, and thereafter, either by the production of oil and gas obtained within that time or the successful outcome of drilling operations begun within it. They argue, in short, that, entirely apart from paragraph 6, a consideration of their principal apparent purpose, as derived from the whole lease, makes it clear that lessor granted, and lessee acquired, the right to hold the lease on payment of rentals, or the conduct of drilling operations, for ten years, with the right to hold it thereafter by producing oil or starting successful operations for the production of oil within that term. They insist that appel-

lant's efforts to have the words "drilling operations" limited to the physical act of drilling into or penetrating the ground is not a reasonable one, for what the parties were thinking of and contracting for was not penetrating, or making holes in, the ground, but the production of oil therefrom. This, they say, was as fully assured by a good-faith commencement, within the term, of the necessary acts of preparation for making the well hole, as it would have been by starting the bit into the ground within it. To the production of oil they say the starting of the drill bit into the ground was as much, but no more, preliminary than making location and other acts, the preparation to dig, the digging of the cellar, the rigging up, and the spudding in. Finally, they insist that, if any support is needed for the view that in using the term "drilling operations" the parties used it in the sense of operations for or in connection with the drilling of the well, this is made clear by paragraph 6, in which "operations for the drilling of a well" and "drilling operations" are used as interchangeable terms: "If operations for the drilling of a well for oil or gas are not commenced on said land on or before one year from this date, this lease shall terminate unless lessee shall pay the sum of $160 which shall operate as rental and cover the privilege of deferring the commencement of drilling operations for the period of one year" (paragraph 6); while the second sentence of the paragraph provides: "In like manner and upon like payments or tenders the commencement of drilling operations may be further deferred."

■ We agree with appellees and with the District Judge. An oil and gas lease under Texas decisions conveys an interest in the oil and gas in place, but it conveys it in accordance with the intention of the parties, and subject to the terms expressed and implied in the lease contract. Cosden Oil Co. v. Scarborough (C.C.A.) 55 F.(2d) 634; Waggoner Estate v. Zigler Oil Co., 118 Tex. 509, 19 S.W.(2d) 27; Mon-Tex Corp. v. Poteet, 118 Tex. 546, 19 S.W.(2d) 32; Leonard v. Prater (Tex.Com.App.) 36 S.W.(2d) 216. When the character, duration, and quality of the estate is fixed by express terms in the lease, these terms must be reasonably construed and applied to give effect to the intention of the parties as they have given it expression, this intention to be ascertained reasonably from the instrument as a whole, not from a consideration of the place or position in it of particular terms or provisions.

■ Appellant would concede that, if the provisions of paragraph 14 were a part of paragraph 2, there would, of course, be no inconsistency, for they would be part of the term clause. His contention that, because they appear in a subsequent and separate paragraph, they may not be given effect, is not, we think, warranted by the controlling authorities. Associated Oil Co. v. Hart (Tex.Com.App.) 277 S.W. 1043; Union Sulphur Co. v. Texas Gulf Sulphur Co. (Tex.Civ.App.) 42 S.W.(2d) 182; Morris v. T. P. Coal & Oil (Tex.Civ.App.) 228 S.W. 981; Ogletree v. Abrams (Tex. Com.App.) 67 S.W.(2d) 227; Lester v. Mid-South Oil Co. (C.C.A.) 296 F. 661; Hansen v. Bacher (Tex.Com.App.) 299 S. W. 225; Texas Jurisprudence, vol. 14, § 144, p. 922.

■ His subordinate position under the first point, that there is such conflict between paragraph 2 and the interpretation appellees would give the provisions of paragraph 14 as to require those provisions to be interpreted differently, is not, we think, better taken. It does not seem reasonable that their only purpose was, as appellant contends, in extension of matters dealt with in paragraph 6, to make more clear that commencement and continuance of drilling operations would keep the lease in force during the preliminary term. It seems to us that the only reasonable view to take of the fourteenth paragraph is that it was added to remove the uncertainty and confusion attending the construction of leases providing for a preliminary term and as long after as oil or gas is or can be produced, but containing no specific provision like that of paragraph 14. Under such leases, where drilling operations have been commenced and are in varying stages short of completion when the preliminary term ends, there might well be room for the differences of opinion which appellant and appellees claim exists. Fagan Co. v. Burns, 247 Mich. 674, 226 N.W. 653, 67 A. L.R. 522; Summers on Oil & Gas, p. 311; South Penn Oil Co. v. Snodgrass, 71 W. Va. 438, 76 S.E. 961, 43 L.R.A.(N.S.) 848; Lester v. Mid-South Oil Co. (C.C.A.) 296 F. 661; De Flores v. Smith (Tex.Civ. App.) 236 S.W. 505; Rich v. Doneghey,

71 Okl. 204, 177 P. 86, 3 A.L.R. 352; Continental Oil Co. v. Osage Oil & Ref. Co. (C.C.A.) 69 F.(2d) 19; Walker, vol. VIII No. 4, Texas Law Review, at 523.

As the provision stands in this lease, it removes from doubt that the parties intended that drilling operations commenced, though not completed, within the preliminary term, would keep the lease in force. Walker, vol. VIII No. 4, Texas Law Review, at p. 516; Smith v. Gypsy Oil Co., 130 Okl. 135, 265 P. 647.

This view is further strengthened by considering that the provision in paragraph 2 is, not that the lease shall remain in force as long as oil is being produced, but that it shall remain in force as long as oil is or can be produced. A reasonable construction of that clause, standing alone, might well be that drilling operations commenced in good faith before the expiration of ten years, and prosecuted diligently to completion and production, would operate to extend it. What question might arise as to this construction, if paragraph 2 stood alone, is completely dissipated, we think, when paragraph 14 is taken into consideration.

■ The second point labored by appellant, the restricted meaning to be given to the words "drilling operations" used in paragraph 14, is, we think, easily disposed of against his contention. It is quite plain that the principal apparent purpose of the parties which the lease was concerned to express was not the making of a hole in, but the production of oil from, the ground, and it would not be reasonable, in the absence of compelling considerations, to say that the parties deliberately chose terms which were intended to give dominating effect to one stage of the preparatory work over another. Summers on Oil & Gas, pp. 362–363; McCallister v. Texas Co. (Tex. Civ.App.) 223 S.W. 859; Terry v. Texas Co. (Tex.Civ.App.) 228 S.W. 1019; Hudspeth v. Producers' Oil Co., 134 La. 1013, 64 So. 891; Smith v. Gypsy Oil Co., 130 Okl. 135, 265 P. 647; Fast v. Whitney, 26 Wyo. 433, 187 P. 192; Cromwell v. Lewis, 98 Okl. 53, 223 P. 671; Robinson v. Gordon Oil Co., 258 Mich. 643, 242 N.W. 795.

But, if any question might be raised on the meaning intended if paragraph 14 stood alone, that question is completely put at rest when it is considered that in paragraph 6 the terms "operations for the drilling of a well," admitted by appellees to include what was done, and "drilling operations" are used interchangeably.

The judgment was right. It is affirmed.