John D. FIELDS et al., Appellants,

v.

**STANOLIND OIL AND GAS COMPANY**
**and Ada Oil Company, Appellees.**

No. 15813.

United States Court of Appeals
Fifth Circuit.

May 31, 1956.

Rehearing Denied July 3, 1956.

Hopkins & Hopkins, Denton, Tex., Ralph Logan, San Angelo, Tex., George M. Hopkins, Jr., Denton, Tex., Glenn R. Lewis, San Angelo, Tex., Neill, Blanks, Lewis & Logan, San Angelo, Tex., Wilson, Wilson & Logan, San Angelo, Tex., of counsel, for appellants.

Carlton R. Winn, Frank J. Scurlock, Dallas, Tex., Lamar Carnes, Houston, Tex., L. A. Thompson, Tulsa, Okl., James K. Smith, Fort Worth, Tex., of counsel, for appellees.

Before HUTCHESON, Chief Judge, and TUTTLE and CAMERON, Circuit Judges.

HUTCHESON, Chief Judge.

Brought by Stanolind Oil & Gas Company, as lessee, and Ada Oil Company, to whom it had assigned the E½ of Section 51 under a farm out agreement, the suit was in equity to quiet, and remove cloud from, title to plaintiffs' oil and gas leasehold estate in and to twenty-three sections of land located in Sutton County, Texas, and for injunction.

The claim was: that plaintiffs were the owners of an oil and gas lease on twenty-three sections of land in Sutton County, Texas, dated August 3, 1944, from John D. Fields, Substitute Trustee, to Stanolind Oil & Gas Company, clause two of which provided:

"Subject to the provisions herein contained [1] this lease is for a term

---

[1] One of these was: "If, at the expiration of the primary term, Lessee is conducting operations for drilling a new well or reworking an old well, or if, after the expiration of the primary term, production on this lease shall cease, this lease nevertheless shall continue as long as said operations continue or additional operations are had, which additional operations shall be deemed to be had where not more than sixty (60) days elapse between abandonment of operations on one well and commencement of operations on another well, and if production is discovered, this lease shall continue as long thereafter as oil, gas or other mineral is produced and as long as additional operations are had."

of ten years from this date, called primary term, and as long thereafter as oil, gas or other mineral is produced from said land hereunder, or drilling or reworking operations are conducted thereon.";

that on July 26, 1954, while the lease was still in force and effect and within the original ten year period, Ada commenced the drilling of a well and prosecuted operations thereon continuously to and including November 24, 1954; that within less than sixty days thereafter, to-wit, on January 8, 1955, and in exact accordance with the terms of the lease, plaintiffs staked a location, made preparations for, and were proceeding with the immediate commencement of a second well to be drilled on the NW¼ of Section 53, another of the sections covered by the lease, but that defendants, upon the unfounded claim that the lease had lapsed and terminated, threatened to interfere, and did interfere, with plaintiffs, hindering and preventing them from doing so, and thereby clouded plaintiffs' title to and enjoyment of their mineral estate in the lands. Plaintiffs therefore prayed that they be quieted in their title to and the enjoyment of the rights granted in the lease, that the clouds be removed therefrom, and that defendants be enjoined from interfering with them in, and preventing their operations under, the lease.

The defenses were: (1) an attack, for the reasons set out in the answer, upon the appointment, the title and the authority of John D. Fields as trustee to execute the lease relied on by plaintiffs; (2) a denial of plaintiffs' claim that the lease had been kept, and was still, in force; and (3) a claim that operations, on which plaintiffs were entitled to rely to keep the lease in force, ceased on November 1, 1954, and that when, on January 8, 1955 they undertook to start drilling another test well thereon, the lease had terminated, expired and ceased to exist.

Plaintiffs' motion to strike defendant's demand for a jury on the authority of Humble Oil & Refining Co. v. Sunray Oil Co., 5 Cir., 191 F.2d 705, denied, the case proceeded to trial before the court and a jury.

In support of their claim and in rebuttal of the claims of defendants, plaintiffs offered documentary and oral testimony to prove the facts as pleaded by them and that the defendants and their predecessors in title, by the acceptance of bonuses and delay rentals, had fully ratified, affirmed, and adopted the lease. Neither oral nor written testimony in contradiction thereof was offered by defendants, and at the conclusion of the trial, the only question of decision was whether the lease was kept in force by operations on the well conducted by plaintiffs after November 1, 1954, and the commencement on January 8, 1955, of operations for the drilling of a new well.

The record standing thus, and plaintiffs moving for an instructed verdict, with the defendants saying, "We think it is a question of fact, and we have no motion", the court, stating: "We find as facts, Gentlemen, that the motion of the plaintiffs for an instructed verdict is borne out by the preponderance of the testimony", directed a verdict for plaintiffs and entered judgment [2] on the verdict.

Appealing from the judgment, the defendants, except the Hopkins group, conceding that the lease was ratified and was in force when the drilling of the first well began, are here insisting: (1) that, as matter of law, plaintiffs' proof showed

2. (1) Adjudging and decreeing that the rights and estates of plaintiffs are affixed in accordance with the terms and provisions of the oil and gas lease from John D. Fields, Trustee, to Stanolind Oil & Gas Co., of date August 4, 1944; (2) removing the clouds cast upon and quieting the title to said leasehold estate; (3) enjoining the defendants from interfering with plaintiffs in the further development and operation of their said leasehold estate; and (4) adjudging and decreeing that plaintiffs shall have the right to renew their operations on the lease within sixty days from the date the judgment becomes final.

the discontinuance of good faith drilling operations after November 1, 1954, and that the sixty days for the commencement of a new well expired on January 1, 1955, eight days before the second location was staked; and (2) that if this is not so, their proof did no more than make an issue of fact, and it was error to instruct a verdict and grant judgment thereon.

The Hopkins defendants make the same contentions and in addition insist that ratification by their predecessor in interest was not established.

Appellees, meeting the first two claims of error head on with the insistence that there was no evidence to support a contrary judgment and that if there was, the case was in equity and the district judge's findings are in accord with the evidence, cite, as completely supporting the judgment of the trial court, cases from this court[3] and from the Texas courts.[4]

As to the claim of the Hopkins group, that the lease was not ratified by them or their predecessor, appellees point to the undisputed testimony of Judge Alvis Johnson,[5] the husband of Thelma Fields, a sister of Eleanor Fields Hopkins, and to the fact that no proof to the contrary was offered by the defendants.

█ The record thus showing conclusively that there is no basis in fact or in law for the special contention of the Hopkins group, we turn from it to consider, in the light of defendants' admissions, which have greatly narrowed and pointed up the issue, the contentions on which the appellants as a whole rely, (1) that the evidence showed as matter of law that the lease had lapsed, and (2) in the alternative, that the proof did no more than make an issue of fact upon whether it had.

Admitting that plaintiffs were in compliance with the terms of the lease and the lease was in force and effect on November 1, 1954, appellants' sole contention is not that what Mr. Bruno testified, without dispute or contradiction, was done on and to the well on and after November 1st, was not done but that it was not, and could not, in law or in fact, be regarded as, additional operations within the meaning of the lease.

In support of this contention, appellants, contrasting what was done before with what was done after November 1st, points, to the testimony of the intensive drilling and working activities between July 26th and November 1st, during which time drilling costs of around $100,-000 were incurred, and, in marked contrast to these strenuous and exhaustive efforts to make a producer, to the testimony of Bruno as to what appellants call the superficial and flimsy acts and things done after November 1st.[6] So

---

3. Humphrys v. Skelly Oil Co., 5 Cir., 83 F.2d 989; Humble Oil & Refining Co. v. Sun Oil, 5 Cir., 190 F.2d 191; Buchanan v. Sinclair Oil & Gas Co., 5 Cir., 218 F. 2d 436; St. Louis Royalty Co. v. Continental Oil Co., 5 Cir., 193 F.2d 778, 779; Woolley v. Standard Oil of Texas, 5 Cir., 230 F.2d 897.

4. Rogers v. Osborn, Tex.Civ.App., 250 S. W.2d 296; Id., 152 Tex. 540, 261 S.W. 2d 311.

5. This was in substance that he was 67 years old, that he had been a member of the Fields family for forty years, and in dealing with the land had been legal adviser to the family about the titles, minerals and matters of that kind concerning the Fields ranch; that the payments in distribution to the various members of the Fields family of the bonuses and rentals paid by Stanolind on account of the lease had all been distributed, received and retained with the knowledge, understanding and consent of all the persons interested in the lease, including Mrs. Hopkins, whose portion, with her knowledge, consent and direction, was paid to her mother, Viola Fields.

6. "We released the completion rig on November 1st. We flowed this well on the 5th of November, I went to Sonora for that purpose. I opened the well on a 2-inch choke, flowing it (the gas) through a 2-inch flow line, allowing the gas to enter it in large volumes for a short period of time which in turn would unload some of the fluid (emulsion breaker) in the well bore. I next went to the well on

pointing, they urge upon us that Bruno's evidence: that on November 1st, he decided to release the swab unit with which they had been trying to clean the well out and to allow the well to be shut in over night while the pressure built up, and that thereafter in order to give time to build up pressure, he flowed the well periodically on November 5th and again on November 8th, 12th, and 21st, 1954, on which latter date he let it flow for thirty-six hours to stabilize it so as to run a potential test for the railroad commission, is not evidence of continued operations within the terms of the lease.

Insisting that the things done were merely trivial acts not done with any hope of production or in course of good faith drilling operations, and that the court should hold the testimony as to them insufficient as matter of law, or at least as doing no more than raising an issue of fact, and citing in support Woods v. Bost, Tex.Civ.App., 26 S.W.2d 299 and Jackson v. Anglin, Tex.Civ.App., 252 S.W. 1085, both dealing with the commencement of a well and both sharply presenting the issue of good faith, appellants thus state their position:

"The clause with which the court is dealing in this case is not a forfeiture clause but a provision which in its nature is a benevolence to the lessee. How far can he stretch it? The time of taking the potential always is selected by the lessee. Can he control the commencement of the sixty day period by moving the date of making the potential test? Can he control its commencement by the simple and wholly innocuous procedure of sending a man out from time to time to let the gas flow a few minutes?"

Appellees, in complete disagreement with this analysis of the facts and the applicable law, insist that appellants misconceive both the law and the thrust and effect of the undisputed facts. Pointing to the more than $100,000 spent on the well and to the fact that while it did not make a showing as a commercial oil well, it did make a showing as possibly a gas well, and urging upon us that before the large amount expended on it is thrown away and the well is abandoned, the operator is entitled under the terms of the lease to a reasonable time within which to test its potentialities appellees reply that appellants are wholly mistaken in considering the clause in question as a gratuity or matter of mere benevolence. Insisting that, on the contrary, under settled law the lease must be construed as a whole and each clause in it must be given its proper construction and effect in the light of the principal apparent purpose of the parties,[7] the development of the land for minerals within the time, under the conditions, and in accordance with the provisions [8] of the lease, they

Nov. 8, 1954, and followed the same process, and went back again on November 12, and followed the same process. I was back again at the well site on November 18, 1954, but didn't flow it. A bulldozer was there cleaning the pits and I was afraid to flow it. I next went back to the well on November 21, let it flow approximately 36 hours to stabilize it, and then ran the potential test, potentialing it on November 23–24."

"I made no written report of the happenings on Nov. 5, 12, and 18. I would say that about three weeks later I made a report on these to my office (I wouldn't say a written report) and they in turn reported to Stanolind. The only money we spent on the well after November 1st

was cleaning up the location and my expenses."

7. Cocke v. Vacuum Oil Co., 63 F.2d 406.

8. " * * * An oil and gas lease under Texas decisions conveys an interest in the oil and gas in place, but it conveys it in accordance with the intention of the parties, and subject to the terms expressed and implied in the lease contract. Cosden Oil Co. v. Scarborough, 5 Cir., 55 F.2d 634; Waggoner Estate v. Sigler Oil Co., 118 Tex. 509, 19 S.W.2d 27; Mon-Tex Corp. v. Poteet, 118 Tex. 546, 19 S.W.2d 32; Leonard v. Prater, Tex. Com.App., 36 S.W.2d 216 [86 A.L.R. 499]. When the character, duration, and quality of the estate is fixed by express

urge upon us that, so construed, it is not appellees but appellants who are seeking an unreasonable construction of an ordinary and usual provision in a lease, the purpose and effect of which is to modify and clarify provisions for lapse which, especially under the conditions now attending the drilling of costly and difficult wells, might otherwise produce a harsh, unreasonable and unjust result.

Pointing out that appellants admit that the well was diligently drilled, that operations on the well were constantly and continuously going on until November 1st, and that by January 8th, plaintiffs had begun their operations for drilling another well, appellees argue that it is the appellants who, under the undisputed facts of the case, are calling for an unreasonable construction of the lease and a hard and unjust decision with a harsh and unjust result.

Agreeing that the question is not one of forfeiture but of the application to the undisputed facts of the invoked provisions of the lease, appellees insist that they must be, and have been construed fairly and reasonably and given their full and fair effect.

In St. Louis Royalty v. Continental Oil Co., 5 Cir., 193 F.2d 778, 779, this court declared that, while the general, the prevailing, rule in Texas is that where the title of the lease is subject to defeasance upon the happening of events clearly set out in the lease, when those events come to pass the title of the lease ceases to exist, the cases do not hold that an ambiguous term in a lease can be so relied upon.

 We think it equally plain that where, as here, the lease unequivocally provides:

"If, at the expiration of the primary term, the lessee is conducting operations for drilling a new well or

reworking an old well, this lease nevertheless shall continue as long as said operations continue, which additional operations shall be deemed to be had where *not more than sixty days elapsed between abandonment of operations on one well and commencement of operations on another well*." (emphasis supplied)

there is no basis under the undisputed facts in this case for the claim that more than sixty days elapsed between the abandonment of operations on one well and the commencement of operations on another.

Upon this record and these facts, the issue of good faith, which appellants now insist was for the jury, was not in the case. No claim was made below, no evidence was offered which would support the claim if made that anything that was done was done other than in good faith and in the usual course of operations in promptly and without undue delay making every reasonable effort to make a producing well out of the first well and when it was ascertained that this could not be done, in beginning within less than sixty days the drilling of another one.

Finally, if we are mistaken in our view that no issue of fact was raised upon whether what was done was done in good faith, we agree fully with the appellees that the case was not a law, but an equity, case, that the jury had no function except in an advisory capacity; that the form of the instruction employed by the judge in directing the jury to find the verdict, amounted to a finding of fact by the judge in favor of the plaintiffs, and that the record fully supports the finding.

We find no basis for any claim of error. The judgment was right. It is affirmed.

terms in the lease, these terms must be reasonably construed and applied to give effect to the intention of the parties as they have given it expression, this intention to be ascertained reasonably from the instrument as a whole, not from a consideration of the place or position in it of particular terms or provisions." Humphrys v. Skelly Oil Co., 5 Cir., 83 F. 2d 989, 991.