Wesley **KOTHMANN** et al., Appellants,

v.

**L. E. BOLEY** et al., Appellees.

No. 15799.

Court of Civil Appeals of Texas.

Fort Worth.

March 29, 1957.

Rehearing Denied April 26, 1957.

Hardwicke, Haddaway & Pope, and Alex Pope, Jr., Fort Worth, for appellant.

Grindstaff, Zellers & Hutcheson, and A. E. Zellers, Weatherford, for appellee.

BOYD, Justice.

This is an appeal from a judgment canceling five oil and gas leases executed by appellees L. E. Boley and wife, Christine Boley, R. E. Boley and wife, Dalpha Boley, and J. V. Boley to appellant Wesley Kothmann, interests in which leases being later assigned to appellants William E. Thoma-

son, J. C. Culpepper, and Caprock Producing Company.

The leases were executed on August 3, 1954. One covered 164 acres, described as Block 22, Henderson County School Land Survey. A provision in that lease reads as follows: "Unless a well is commenced within sixty days from this date the lease shall terminate, and when commenced, said well to be drilled to the Ellenburger lime unless oil and/or gas is encountered at a lesser depth." Another provision is: "Subject to the other provisions herein contained, this lease shall be for a term of 1 year from this date (called 'primary term') and as long thereafter as oil, gas or other mineral is produced from said land hereunder."

The other four leases covered tracts of varying sizes, and all contained the provision that "Unless a well is commenced within sixty days from this date" on Block No. 22, then the "lease shall terminate as to both parties"; and the further provision that "Subject to the other provisions herein contained, this lease shall be for a term of 1 year from this date (called 'primary term') and as long thereafter as oil, gas or other mineral is produced from said land hereunder."

By correction instruments it was shown that the property covered by the lease first herein mentioned, and referred to in the other leases, was erroneously described as Block 22, Henderson County School Land Survey, and it was intended by all parties that the lease should cover Lot 22, in Block 1, in said Survey.

Three wells had previously been drilled by other parties on Lot 22, and all had been abandoned as dry holes. Appellants did not commence a well at a new location, and appellees insist that the leases terminated, and they say that appellants' operations consisted of nothing more than redrilling or reworking the old holes. Appellants contend that they complied with the obligation in the leases.

On August 31, 1954, appellants filed with the Oil and Gas Division of the Railroad Commission an application containing the following:

"Application to Drill, Deepen or Plug Back

"Is This an Application to Drill, Deepen or Plug Back? Re-Drill

"  *       *       *       *       *       *

"Depth to which you propose to drill. 6144 feet.

"  *       *       *       *       *       *

"This well was plugged and abandoned as a dry hole Feb. 28, 1943 and was drilled to total depth of 6144 ft. It is intention of this applicant to re-drill this hole and attempt completion."

On September 7, 1954, appellants filed another application with the Oil and Gas Division of the Railroad Commission containing the following provisions:

"Application to Drill, Deepen or Plug Back

"Is This an Application to Drill, Deepen or Plug Back? Re-Drill

"  *       *       *       *       *       *

"Depth to which you propose to drill. 3000 feet.

"Date work will start deepening. At Once.

"  *       *       *       *       *       *

"This well was drilled September, 1954 and was abandoned by operator as a dry hole. It is the intention of this applicant to re-drill said well and attempt completion."

The three abandoned wells were referred to in the testimony as the south well, the middle well, and the north well. Appellants first set a drilling rig over the south hole, but at about 160 feet it started caving and they moved the rig to the north well and set it over that hole. Shortly after beginning operations there, the rig was replaced by a larger one. This well had been previously drilled to 3,000 feet. Appellant Kothmann testified, "We drilled

237

down to 3000 feet and then we had to start putting on new bits, and we used four rock bits to drill from 3000 to 3400." Pipe was set at 3,000 feet and the well was perforated and "sand fracted." Gas in paying quantities was found in this well. Then appellants set the rig over the middle hole, which had been previously drilled to 6,144 feet. Kothmann testified that the first hole here was a five inch hole, and that appellants drilled a five and one-half inch hole from the surface to 3,100 feet, where pipe was set. This well was also perforated and "sand fracted," and it produced gas.

Kothmann testified that the north and middle wells had been filled or had caved in, and that appellants "drilled" all the way from the surface. Appellee L. E. Boley testified that appellants did not drill a larger hole at the middle well, but only "cleaned it out" to about 3,000 feet. He denied that appellants did any "drilling," he said, "They just set up over the old holes and reworked them." He referred to appellants' operations as "clean out jobs." It was not denied, however, that appellants deepened the north hole 400 feet. Their operations were begun within the sixty day period.

Appellants pleaded that they complied with the obligation to "commence a well," and that appellees had waived, and were estopped to assert, cancellation of the leases, and had ratified the acts of appellants in the drilling, operation, and development of the leasehold estate. The basis of the claims of waiver, estoppel, and ratification was the alleged conduct, representations, and silence of L. E. Boley, acting for himself and as agent for the other lessors.

■ Only one issue was answered by the jury. It was: "No. 1: Do you find from a preponderance of the evidence that L. E. Boley by his acts, representations, conduct or silence, led the defendants to believe that the plaintiffs would not insist upon the commencement of the drilling of a well at a new location on Lot 22 during the period August 3, 1954 to October

3, 1954?" The jury answered: "He did not." Three other issues were submitted, conditioned upon an affirmative answer to No. 1. No other issue was requested, and there was no exception to the charge. The finding of the jury is not challenged. And we must assume that the court found all other issues of fact in such manner as to support the judgment. Rule 279, Texas Rules of Civil Procedure.

■ L. E. Boley testified that it was agreed by himself and Kothmann that lessee was to commence a new well at a new location. This testimony was objected to, and was denied by Kothmann. It was not alleged that the provision in the lease as to the commencement of a well was ambiguous, or that there was any fraud, accident, or mistake which resulted in the use of verbiage not contemplated by the parties.

Boley also testified that he told Kothmann, while appellants were working on the old wells, and during the sixty day period, that the contracts called for the commencement of a well, and that they had not commenced a well.

We have been referred to no case, and have found none, which we consider to be authoritative; but it is our opinion that appellants did not commence a well as they were obligated to do by the leases.

Webster's New International Dictionary, Second Edition, defines "commence" as follows: "To have or make a beginning; to originate; start; begin. * * * To enter upon; to begin; initiate; to perform the first act of; as, to *commence* a lawsuit. Syn.—Initiate, start." In Terry v. Texas Co., Tex.Civ.App., 228 S.W. 1019, it is said that one of the definitions of the word " 'commence' " is " 'to perform the first act of.' "

While in their brief appellants say that the exact question for determination is whether they complied with the obligation to "commence a well," some of their argument is to the effect that they commenced and prosecuted "drilling operations." But

that was not the obligation imposed upon the lessee. Although commencing a well would constitute drilling operations, drilling operations would not in every case be the commencement of a well.

Appellants cite Humphrys v. Skelly Oil Co., 5 Cir., 83 F.2d 989, 990, which considered an oil and gas lease covering land in Texas. But the case does not appear to support the proposition here advanced, that is, what appellants did amounted to the commencement of a well. The obligation under the lease construed in that case was to commence "drilling operations." The court held that "drilling operations" were commenced by completing the work of "rigging up and spudding in the well."

The case at bar is not analogous to those cases where there has been no previous drilling and where the obligations were to commence a "well," or a "test well," or "drilling operations," because any drilling operation in those cases would constitute the commencement of a well, and necessary preliminary preparations would be the "commencement."

Appellees and Kothmann knew when the leases were executed that the three wells had been drilled and abandoned on Lot 22. The only consideration moving to appellees was the obligation to commence a well and to drill to the Ellenburger lime unless oil or gas should be encountered at a lesser depth.

Appellants objected to the testimony to the effect that it was agreed by the parties that a well at a new location was contemplated. They persuasively argue that the lease is not ambiguous, and that since it it was not alleged that it is ambiguous, or that the verbiage resulted from fraud, accident, or mistake, such testimony violated the parol evidence rule and had no probative force. We are not disposing of the appeal on any theory that the obligation to be performed in sixty days was other than to "commence a well."

If that provision is not ambiguous, it of course means what it says. Appellants·

did not perform the "first act of" drilling either of the old wells. They did not "start," "begin," or "initiate" such operation. The evidence supports the implied findings of the court that appellants' operations were confined to cleaning out, perforating, "sand fracting" two of the abandoned wells, and deepening one of them, and that they did only what, in their applications for permits, they stated it was their intention to do, namely, to redrill the old holes and attempt completions.

Nothing can be commenced which has already been started. Appellants' obligation was either to "commence" a well, or it was to attempt to complete one which had theretofore been commenced.

In our opinion the obligation was the former. We reach the near before we approach the remote.

The judgment is affirmed.

MASSEY, Chief Justice.

I respectfully dissent.

I believe that two purposes or intents might be inferred from the language used in the contract. Obviously the appellees are denying this and insisting that the only purpose which might be inferred is the institution of drilling operations by appellants in the first disturbance of the surface of the earth at the site thereof. Appellants likewise deny this, and insist that the only purpose which might be inferred was the obtaining of oil or gas in paying quantities for the benefit of both sets of parties.

If two purposes or intents may be inferred from the language used and the main purpose clearly appears, such main purpose will control. This rule means that where language is used which is susceptible of two meanings, that meaning will be adopted which does not contradict the main purpose of the instrument, as evident on its face. 10 Tex.Jur., p. 273, "Contracts", sec. 159, "Intention of Parties".

In the case of Struss v. Stoddard, Tex. Civ.App., Fort Worth, 1953, 258 S.W.2d

413, at page 417, writ ref., n. r. e., I stated as follows: "A 'dry hole' will therefore never be considered a well of any kind or character with respect to a contract for the drilling of a 'well' for oil or gas, unless by express wording of the contract, or by necessary implication from the general intent and leading purpose to be accomplished thereby, it must be so considered."

I believe the main or leading purpose to be accomplished by the contract between the parties was in accordance with the contention made by appellants as the sole purpose. I therefore am of the opinion that appellants should be held to have performed their obligations under the contract in accordance with its provisions.

Furthermore, I believe that the drilling to a deeper level, as was performed at the north well, would be a "commencement" in accord with the provisions of the contract.

I believe judgment should be rendered for appellants.